Defendants' appeal argues that plaintiff is not entitled to temporary total disability compensation. Plaintiff's appeal contends that the Deputy Commissioner erred by not finding him permanently and totally disabled.
Both appealing parties give sufficient ground for the Full Commission to review the record, but upon doing so the Full Commission finds and hereby holds that the Deputy Commissioner arrived at the proper conclusions. The Full Commission does HEREBY AFFIRM the decision of the Deputy Commissioner, and does ADOPT the findings of fact as found by the Deputy Commissioner.
* * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties as
STIPULATIONS
1. At the time of the injury giving rise to the claim herein the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At said time, the employer-employee relationship existed between the plaintiff and the defendant-employer.
3. Vanliner Insurance Company is the carrier on the risk.
4. The average weekly wage shall be determined by the Form 22 Wage Chart.
* * * * * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission makes the following
FINDINGS OF FACT
1. Plaintiff was injured in a motor vehicle accident on November 19, 1991 while riding as a passenger in the sleeper cab of a truck owned by defendant-employer and driven by James D. Collins, a co-employee. At said time, plaintiff was employed as a long-distance truck driver for defendant-employer and was traveling through the State of Wyoming.
2. Plaintiff was asleep in the sleeper berth of his employer's truck with his back turned toward the front of the cab. One of the safety belts located in the sleeper was pulled across the sleeper from one side to the other at the level of plaintiff's waist. The driver of a pick-up truck lost control of her vehicle and collided head-on with the tractor-trailer truck in which plaintiff was a passenger. The impact from the collision thrust plaintiff's body towards the front of the truck and into the safety belt with his back striking first.
3. At said time, plaintiff was a forty-four year old man with an eighth grade education who had completed truck driving school and had been working as a truck driver for defendant-employer for approximately one year. Plaintiff's job duties as a truck driver also involved loading and unloading trucks and lifting 50 to 60 pounds about 5 percent of the time.
4. Immediately after the collision, plaintiff felt some pain and bodily soreness that he believed would disappear over a period of a few days. On the day following the collision, however, plaintiff began to experience more intense pain in his back. In that he was a long distance away from home, he called a company dispatcher and reported that his back was hurting as a result of the collision; that he needed to lie down; and that he needed authorization to get a motel room. This authorization was granted. Thereafter, plaintiff's back pain improved with two days of rest and he was able to continue on the trip.
5. Following the collision plaintiff continued to experience periodic pain and soreness which was extreme at times. He took over-the-counter medication and continued to believe that the pain would resolve on its own.
6. After the November 19, 1991 trip plaintiff made another long distance trip for the defendant-employer. During said trip his pain intensified to the point that he required bed rest immediately upon his return home on December 21, 1991.
7. Plaintiff notified the dispatcher for defendant-employer that he was going to the doctor and he also tried to call his supervisor, but was switched to another person.
8. Plaintiff called the toll free number to the employer's insurance company to get assistance with his medical treatment. Plaintiff was advised that the insurance company of the driver who caused the accident would pay his medical bills. Plaintiff waited and after no one contacted him, he decided to seek medical treatment on his own.
9. On December 30, 1991 plaintiff sought treatment with Dr. Timothy L. Holcomb, a chiropractic physician at Dunn Chiropractic Center. At said time, plaintiff complained of pain and stiffness in his lower back and neck with frequent headaches, pain in both legs and mid-back, nervousness, fatigue, blurred vision, ringing in both ears and some loss of memory. Upon examination, Dr. Holcomb found restricted range of motion of the spine, muscle spasms, and strain and sprain to the spine. Dr. Holcomb diagnosed acute moderate post traumatic cervical, thoracic and lumbar sacral sprain/strain. Plaintiff had no prior history of back pain or back injury.
10. According to Audrey Lynn Brendle, director of safety and driver personnel for defendant-employer, company policy requires employees to contact their manager immediately if there is a work-related injury. The dispatcher is required to forward any employee injury reports to the director of safety or a manager. On December 31, 1991 plaintiff's call was handled by John Hart. Ms. Brendle admitted that plaintiff told his employer on December 31, 1991 that he had been to a doctor and that he needed some help for his back. She contacted defendant-insurance carrier and they took over the file. She didn't know what the carrier had done thereafter.
11. Dr. Holcomb treated plaintiff daily for two weeks; three times a week for a period thereafter; and discharged plaintiff on April 9, 1992. After his discharge, plaintiff sought treatment with Dr. Holcomb on five subsequent occasions: April 24, 1992, July 10, 1992, September 23, 1992, November 27, 1992 and December 14, 1992.
12. Upon discharge on April 9, 1992 plaintiff's diagnosis was chronic post-traumatic headaches, chronic post-traumatic cervicalgia and chronic post-traumatic lumbalgia. Dr. Holcomb opined that plaintiff would experience difficulty in the future as a result of his condition. He recommended that plaintiff continue therapy. He also felt that plaintiff was unable to work as a result of his injuries and that he was not able to make a determination of when plaintiff would be able to return to work.
13. Plaintiff was referred in January 1992 by Dr. Holcomb to Dr. P. K. Vyas who practiced in the areas of internal medicine and family practice. Dr. Vyas examined plaintiff initially on January 24, 1992. At said time, plaintiff was complaining of pain in the neck, shoulder, mid-back and lower back. Dr. Vyas diagnosed multiple contusions to several areas of the body and recommended that plaintiff continue to follow up with treatment at the chiropractor and return to him in one month. Dr. Vyas treated plaintiff on February 7, 1992, February 24, 1992, April 7, 1992, June 2, 1992 and June 30, 1992. Dr. Vyas referred plaintiff to Dr. Dhillon, an orthopaedic specialist in Raleigh, and to physical therapy. Plaintiff's x-rays and bone scans were unremarkable. There was no evidence of a herniated disk. On June 30, 1992 plaintiff's pain had resolved to a large extent, except when performing exertional activities and plaintiff expressed a desire to go back to work. Dr. Vyas was concerned, however, based upon his objective and subjective findings, that resumption of exertional activities at work would cause the plaintiff's disabling pain to return.
14. Dr. Vyas sent a letter to plaintiff's attorney dated July 6, 1992 stating that plaintiff was unable due to his injuries to do any productive work and that he had sustained a ten (10) percent disability in reference to his lower back injury.
15. After June 30, 1992, Dr. Vyas had no further contact with plaintiff until on or about December 8, 1992 when plaintiff returned with pain complaints. Dr. Vyas felt that he had done all that he could do for the plaintiff and rendered an opinion without the benefit of further testing that plaintiff was disabled from work permanently. The undersigned does not accept this opinion as credible.
16. Based upon the evidence presented, the plaintiff did not know the nature and extent of his injury until the latter part of December 1991 in that his condition was not diagnosed until December 30, 1991. On the following day, December 31, 1991, plaintiff gave verbal notice to his employer that he was unable to work due to the injury he sustained in the motor vehicular accident of November 19, 1991, and on January 15, 1992 plaintiff's attorney gave written notice to the employer. Plaintiff had previously given notice of his injury and the pain and soreness arising from the motor vehicular accident to the employer on or about November 20, 1991 by a telephone call to the company dispatcher.
17. Even if plaintiff had failed to give proper notice of his injury, the defendant has produced no evidence that it was prejudiced by such failure of the plaintiff to give the statutory notice of his injury within a 30-day period and plaintiff would have had reasonable excuse in that he did not know the nature and extent of his injury until December 30, 1991.
18. Upon receipt of notice from the plaintiff of the nature and extent of his injury and his resulting disability, the defendant-employer contacted its insurance carrier and took no further action. There is no evidence that a statement denying liability and the basis for such denial was sent to the plaintiff or to the Industrial Commission or to plaintiff's attorney. A Form 19 was not filed with the Industrial Commission until February 10, 1992.
19. Defendant-employer admits that it received a letter from Dr. Holcomb dated February 14, 1992 stating that the plaintiff was under his care for injuries sustained in an automobile accident which occurred on November 19, 1991 and that the plaintiff was not able to return to work. Ms. Brendle testified that she did not receive the letter from plaintiff's attorney dated January 15, 1992 stating that plaintiff would be required to be out of work as a result of his work-related injuries from the accident of November 19, 1991 with the Form 18 enclosed. Said letter further requested that defendant-employer voluntarily pay for plaintiff's medical care or notify plaintiff's attorney of the type of care the company would provide. Ms. Brendle did not bring her workers' compensation file to the hearing and her testimony that she did not receive said letter was not accepted as credible by the Deputy Commissioner. The Full Commission concurs with this assessment.
20. Based upon the opinions of Dr. Holcomb and Dr. Vyas and the competent evidence presented, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on November 19, 1991 and as a result of said injury plaintiff was unable to work from December 22, 1991 through June 30, 1992.
21. After June 20, 1992 the plaintiff was incapable as a result of his injury of earning the same wages he earned before his injury in the same employment. There is no competent evidence, however, that plaintiff was incapable of earning the same wages he earned before his injury in any other employment.
22. It is undisputed that plaintiff made no attempt to return to his former employment in any capacity or to any other employment after June 30, 1992. Dr. Holcomb and Dr. Vyas both opined that plaintiff was unable as a result of his injury to do any productive work. The underlying basis for this opinion is not clear. Therefore, this opinion alone does not satisfy plaintiff's burden of producing substantial evidence that his wage earning capacity has been impaired by his injury even though defendants presented no evidence to contradict Dr. Vyas and Dr. Holcomb.
23. The defendants made no attempt to refer the plaintiff to a physician for treatment, nor to provide medical assistance of any nature to the plaintiff even though the plaintiff through his attorney requested voluntary payment of plaintiff's medical treatment from defendant-employer. Dr. Holcomb was the physician chosen by the plaintiff and the treatment he provided was reasonably required to effectuate a cure or rehabilitation. Dr. Holcomb referred plaintiff to Dr. Vyas and Dr. Vyas referred plaintiff to Dr. Dhillon and to physical therapy. Said treatments were reasonably required to effectuate a cure or rehabilitation, give relief and/or lessen his period of disability.
24. Plaintiff's average weekly wage was $361.51.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident or specific traumatic incident arising out of and in the course of his employment with defendant-employer on November 19, 1991. Said injury is compensable. N.C.G.S. § 97-2 (6).
2. Plaintiff gave notice of his injury to the employer within the 30-day period prescribed by N.C.G.S. § 97-22. Even if the notice given by plaintiff of his injury on or about November 20, 1991 did not comply with the statute, plaintiff would have had reasonable excuse in that he did not know the nature and extent of his injuries within the thirty-day statutory period and the defendants were not prejudiced thereby. Plaintiff gave proper notice to the employer that his injury had become disabling after the nature and probable extent of his injuries were diagnosed.
3. As a result of his injury, plaintiff was temporarily and totally disabled from work from December 22, 1991 through at least June 30, 1992, the date plaintiff reached maximum medical improvement and was released by Dr. Vyas to try to return to work. Plaintiff is entitled to temporary total disability compensation from December 22, 1991 through June 30, 1992.
4. As a result of said injury, plaintiff sustained a ten percent (10%) permanent partial impairment to his back and is entitled to permanent partial disability compensation from the defendants for said impairment.
5. Plaintiff is entitled to have defendants provide all medical treatment arising from his compensable injury to the extent it tends to effect a cure or rehabilitation, give relief and/or tend to lessen his period of disability.
6. In that defendants did not directly refer plaintiff to a physician, plaintiff is authorized to select a physician of his choice. N.C.G.S. § 97-25.
7. Plaintiff's average weekly wage was $361.51 yielding a compensation rate of $240.98 per week.
* * * * * * * * * * *
Based upon all of the foregoing, the Full Commission enters the following
AWARD
1. Subject to the attorney's fee awarded herein, defendants shall pay to plaintiff temporary total disability compensation at the rate of $240.98 per week from December 22, 1991 through June 30, 1992. This amount having accrued, it shall be paid to plaintiff in a lump sum.
2. Subject to the attorney's fee awarded herein, defendants shall pay to plaintiff permanent partial disability compensation at the rate of $240.98 per week for 30 weeks in one lump sum for the ten percent (10%) permanent partial impairment to his back.
3. The treatment provided to plaintiff by Dr. Holcomb, Dr. Vyas, Dr. Dhillon and physical therapy is hereby authorized and defendants shall pay all medical expenses incurred by plaintiff. Defendants shall also pay all medical expenses to be incurred by plaintiff as a result of his compensable injury for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure or give relief and will tend to lessen plaintiff's period of disability, when bills for same have been submitted through defendant-carrier to the Industrial Commission and approved by the Commission.
4. A reasonable attorney's fee of twenty-five (25) percent of the compensation due plaintiff herein is approved for plaintiff's counsel and shall be deducted from said sum and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs due this Commission.
This the _____ day of __________________________, 1994.
FOR THE FULL COMMISSION
 S/ __________________ JAMES J. BOOKER COMMISSIONER
CONCURRING:
S/ ___________________ THOMAS J. BOLCH COMMISSIONER
S/ ___________________ COY M. VANCE COMMISSIONER
JJB:mj 11/30/94